IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY WHEELER, #A81100,       )
                                )
            Plaintiff,          )
                                )
vs.                             )        Case No.  09–cv–114–SCW
                                )
JAY MERCHANT, JASON BRADLEY,    )
CHRISTEL  CROW,  FREDERICO      )
FERNANDEZ,  MARK   HARTMAN,     )
GREGORY JAMES, TERESA KISRO,    )
RICK SUTTON,                    )
                                )
            Defendants.

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.  Introduction

Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 112).

Defendants seek summary judgment for Defendants Merchant, James, Sutton, Fernandez, and Crow

on Plaintiff's deliberate indifference claim regarding his inhumane conditions of confinement.

Defendants also seek summary judgment on Plaintiff's retaliation claim because they argue Plaintiff

cannot prove that his infraction and subsequent discipline would not have occurred without retaliatory

motive and because Plaintiff's claim would invalidate the discipline Plaintiff received.  Plaintiff has filed

a Response in opposition to the motion (Doc. 126).  Based on the following, the Court **GRANTS**

Defendants' motion for partial summary judgment (Doc. 112).

### II.  Factual Background

The claims in Plaintiff's Complaint occurred while Plaintiff was housed at Pickneyville

Correctional Center in the summer of 2008.   Plaintiff alleges that while he was housed at Pickneyville

Correctional Center he was subjected to unsanitary conditions in two cells.  He also alleges that

Defendants retaliated against him for being a jailhouse lawyer by issuing him a disciplinary ticket. The allegations in Plaintiff's Complaint begin with a disciplinary ticket which Plaintiff received on June 10, 2008 for unauthorized movement. Plaintiff was issued the ticket at 4:30 p.m. by Defendant James as he was exiting the dining hall en route to the law library. Plaintiff stated in his deposition that as he was exiting the dining hall, James called him out of line and escorted him to segregation (Doc. 112 Ex. A at p. 28). Plaintiff stated that James never explained why he was being taken out of line, only ordered him to turn around and cuff up (*Id.* at p. 29). He was subsequently charged with stopping to talk to other inmates entering the dining hall while his line continued to proceed to the law library, although Plaintiff did not receive his disciplinary ticket until a few days later (Doc. 1 Ex. C; Doc. 112 Ex. A at p. 31-32).

Upon being cuffed by Defendant James, Plaintiff was escorted to receiving segregation and left in the shower area with segregation officers, at which point Defendant James left and Plaintiff never saw him again (Doc. 112 Ex. A at pp. 37-38, 68). Plaintiff was subsequently placed in Cell 23 in receiving segregation. While in Cell 23, Plaintiff said he was first subjected to sweltering heat as he believed that the heat in Cell 23 was turned on (*Id.* at pp. 41-43). While in this cell, he also experienced a bug infestation, with the cell being occupied by roaches, ants, and spiders. Plaintiff also complained that the cell, including the sink, walls, toilet, and floor, were covered in feces, leftover food, and saliva (*Id.* at p. 47). Plaintiff also noted that the electrical outlets did not work in Cell 23, so he was not able to run his fan once he received his personal property (*Id.*). The noise in Cell 23 was also excessive and Plaintiff could not sleep (*Id.* at p. 48).

On June 19, 2008 Defendant Jason Bradley conducted a search of Cell 23 (*Id.* at p. 72-73, 83; Doc. 1 Ex. B). Plaintiff was handcuffed and ordered out of the cell while Bradley went through Plaintiff's paperwork, scattering numerous documents on the ground (*Id.* at p. 74). As a result of the

search, Bradley confiscated legal documents belonging to other inmates and Plaintiff was charged with a disciplinary report for possession of unauthorized information (*Id.* at pp. 74-75, 79; Doc. 1 Ex. B). Plaintiff stated that while Bradley went through his papers, he asked Plaintiff about the nature of his lawsuits and asked why he filed so many complaints (*Id.* at p. 79)  Plaintiff appeared before Rick Sutton, Christel Crow, and Frederico Fernandez and pled guilty to the charge (*Id.* at pp. 74-75; Doc. 1 Ex. D). As a result of the charge, he was disciplined with one month loss of good time credit, one month C grade, and segregation (*Id.* at pp. 76-77).  Plaintiff never got his good time restored, although he admits he has received additional good time since the incident for good behavior (*Id.*).   Plaintiff alleges in his Complaint that he received the disciplinary ticket and that Defendants found him guilty because he is a jailhouse lawyer (*Id.* at p. 78).

As a result of his guilty finding on the disciplinary reports, Plaintiff was transferred to the segregation unit and housed in Cell 5C-69 (*Id.* at p. 83).  Plaintiff stated in his deposition that the conditions in 5C-69 mirrored those of Cell 23 and were "deplorable" (*Id.* at p. 85).  Plaintiff stated that while it was not hot in the cell and the electrical outlets worked (unlike in Cell 23), the rest of the conditions were the same (*Id.* at p. 86).  The cell was covered in bodily fluids and dry leftover food, and was infested with insects (*Id.*).

Plaintiff noted in his deposition that many of his listed Defendants did not see him while he was in either Cell 23 or Cell 5C-69.  Plaintiff noted that Jay Merchant, the assistant warden, did not speak or see Plaintiff while he was in either cell (*Id.* at pp. 50, 53-54, 92).  Plaintiff only notes that Merchant concurred with the findings of the adjustment committee when he was found guilty of his second offense, possession of unauthorized information, and that he was the assistant warden and thus the supervisor of the prison staff (*Id.* at pp. 51-52. 56).  Plaintiff believes that Merchant should have known of his cell conditions as he is responsible for the overall operations of the prison, but he does

not have any evidence that Merchant was aware of the condition of his cell during the fourteen (14) days

he was in Cell 23 (*Id.* at pp. 62-63, 67). As to Defendant Gregory James, Plaintiff stated that James only

escorted him to the segregation unit and he did not place him in or see him in either Cell 23 or 5C-69

(*Id.* at pp. 68, 87). As to Defendants Rick Sutton and Frederico Fernandez, Plaintiff acknowledged that

they were on the adjustment committee that heard his disciplinary ticket for unauthorized movement

and possession of unauthorized contraband, but neither placed him in either cell or spoke or saw him

while he was in the cells (*Id.* at pp. 69-72, 87-88). Plaintiff noted that Christel Crow was also on the

adjustment committee and never saw Plaintiff's cell (*Id.* at p. 75, 81, 90)

   Plaintiff, however, did note in his deposition that Jason Bradley conducted the search

of his cell while he was in Cell 23 and that he did see the conditions of Plaintiff's cell at that time (*Id.*

at pp. 72). Plaintiff stated that he pointed out the conditions of his cell while Bradley searched the cell,

but turned a blind eye and informed Plaintiff that this was not a hotel (*Id.* at p. 81). Plaintiff did not see

Bradley after he concluded the search his cell and did not see him while he was housed in 5C-69 (*Id.* at

p. 89). Plaintiff also noted that Defendant Teresa Kisro was aware of his cell conditions in Cell 23

because she would meet with Plaintiff in his cell to discuss grievances (*Id.* at pp. 81-82). While she was

in the cell, Plaintiff pointed out the unsanitary conditions and informed her that the electrical outlet did

not work (*Id.* at p. 82). Kisro also met with Plaintiff while he was in 5C-69 to return grievances and

observed the unsanitary conditions (*Id.* at p. 90-91). Plaintiff also stated that Mark Hartman went in his

cell while he was housed in Cell 23 (*Id.* at p. 83). Hartman was also Plaintiff's counselor while he was

housed in 5C-69, although Plaintiff stated that he rejected numerous grievances and refused to talk to

him although he did approach his cell door on occasion (*Id.* at p. 91). He did try to explain the

condition in his cell when Hartman came to his cell, but Plaintiff testified that Hartman would not

acknowledge the conditions (*Id.* at pp. 91-92).

### III.  Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted)(citing FED.R.CIV.P. 56(a));** *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* **422 F.3d 603, 607 (7th Cir. 2005)..**  The party seeking summary judgment bears the initial burden of demonstrating - based on the pleadings, affidavits, and/or information obtained via discovery - the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**.

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986)(quoting FED.R.CIV.P. 56(e)(2)).**[1]  A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).**  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.**  "A mere scintilla of evidence in support of the nonmovent's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence

---

[1]  Rule 56 was revised in December 2010.  According to the Report of the Judicial Conference Committee on Rules of Practice and Procedure, the revisions "are not intended to change the summary judgment standard or burdens."  Judicial Conference Committee on Rules of Practice and Procedure, Report to the Chief Justice of the United States and Member of the Judicial Conference of the United States, 14 (Sept. 2009), available at: http://www.uscourts.gov/uscourts/RulesAndPolices/rules/Reports/Combined_St_Report_Sept_2009.pdf.

to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted)**.

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009)**.  The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor.  *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d at 512.**   Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004).**  *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

## IV.   Analysis

### A.   Cell Conditions

Plaintiff alleges that Defendants Merchant, James, Sutton, Fernandez, Bradley, Crow, Kisro, and Hartman violated his Eighth Amendment rights but subjecting him to inhumane conditions of confinement.  Specifically, Plaintiff alleges that Defendants placed him in a cell that was subject to excessive heat and noise, infestations of insects, and exposure of bodily fluids from the previous inhabitants. The Eighth Amendment requires a minimum standard for treatment of prisoners including that prisoners are provided with humane conditions of confinement. *Farmer v. Brennan*, **511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing** *Helling v. McKinney*, **509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993))**.  Prison officials must provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* **(citations omitted)**.  In order to succeed on an Eighth Amendment claim for inhumane conditions of confinement, an inmate must establish: (1) that he was housed under conditions that were "'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal

Page 6 of  14

civilized measure of life's necessities'", and (2) the defendant was deliberately indifferent to that risk. *See Townsend v. Fuchs*, **522 F.3d 765, 773 (7th Cir. 2008);** *Grieveson v. Anderson*, **538 F.3d 763, 775 (7th Cir. 2008)**.  In order to prove deliberate indifferent, the plaintiff must show that the prison officials actually knew of the condition but refused to take reasonable steps to resolve it. *Townsend*, **522 F.3d at 773;** *Grieveson*, **538 F.3d at 775.**

Defendants Merchant, James, Sutton, Fernandez, and Crow argue that they are entitled to summary judgment on Plaintiff's Count I for his inhumane conditions of confinement because they lack the required culpable state of mind.[2]  They point to evidence in Plaintiff's own deposition where he acknowledged that Defendants were not aware of the conditions in his cells.  Plaintiff acknowledged that neither Merchant, James, Sutton, Fernandez, or Crow ever saw his cells, nor did Plaintiff ever discuss the conditions of his cells with any of these Defendants.  Plaintiff, on the other hand, argues that Defendant Kisro, who has not sought summary judgment on this claim, spoke with Major Hammond about a revised cleaning schedule and since such a schedule was implemented that any officer, including the assistant warden and the adjustment committee members, would be aware of the situation.[3]

However, for purposes of a condition of confinement claim, it is not enough that an official should have known of the condition or was negligent in any way.  Instead, the deliberate indifference standard requires that Plaintiff had knowledge of the substantial risk. *Pierson v. Hartley*, **391 F.3d 898, 902 (7th Cir. 2004).**  Knowledge can also be demonstrated by "show[ing] that the official received information from which the inference could be drawn that a substantial risk existed, and that

---

[2]  Defendants Bradley, Kisro, and Hartman do not seek summary judgment on this claim. Plaintiff testified that these three Defendants visited Plaintiff while in either Cell 23, 5C-69, or both, and that Plaintiff voiced his concerns about the condition of the cells to them.

[3]  The Court notes that Plaintiff does not note anything about Defendant James who was neither an adjustment committee member or an assistant warden.

the official actually drew the inferences." *Townsend v. Fuchs*, **522 F.3d 765, 773 (7th Cir. 2008)**

**(citing *Pierson*, 391 F.3d 898, 902 (7th Cir. 2004)).** That is not the case here. There is no evidence

in the record that any of the moving Defendants received a revised cleaning schedule or that, if the

Defendants did receive a schedule, that they would draw the inference that Plaintiff was subject to

inhumane conditions. As to Defendant Merchant, Plaintiff stated in his deposition that he signed off

on the adjustment committee's findings on Plaintiff's disciplinary report but there is no evidence that

he knew about the conditions of the cell that Plaintiff was placed in. Plaintiff has also failed to offer

any evidence that Merchant received the revised scheduling order or drew the inference from such an

order that Plaintiff's individual cell was unsanitary. While Plaintiff argues that as assistant warden, one

can reasonably infer that he was aware of sanitation issues in the segregation wing, but it is not enough

to show that he should have known. *Townsend*, **522 F.3d at 773 ("not enough for the inmate to**

**show that the official acted negligently or that he or she should have known about the risk").**

Plaintiff must demonstrate that Defendant Merchant had knowledge of the cell conditions and there

is simply no evidence in the record to create an issue of fact on that issue.

Further, Plaintiff has failed to offer any evidence that anyone on the adjustment

committee received this revised schedule or that the receipt of such information would make them

aware of the unsanitary cell conditions allegedly in Plaintiff's cell. Nor is there any evidence that the

adjustment committee even knew about the conditions Plaintiff faced. Plaintiff testified at his

deposition that Defendants Sutton, Ferndandez, and Crow were on the adjustment committee that

heard his disciplinary reports, none of which involved the conditions of his cell. Plaintiff also

acknowledged that the Defendants were not in charge of placing him in a certain cell and that he never

spoke to any of the members about his cell nor did they ever visit or even pass by Plaintiff's cell.[4]  There

is no evidence in the record that they had any knowledge about Plaintiff's cell conditions.  Accordingly,

the Court finds that Defendants Merchant, Sutton, Ferndandez, and Crow are entitled to summary

judgment as there is no evidence that they had any knowledge of the condition of Plaintiff's cells or that

Plaintiff complained to any of them about the conditions of his cells.

Further, the Court notes that Plaintiff has not raised any argument as to Defendant

James.  Plaintiff argues that the adjustment committee and Defendant Merchant, as assistant warden,

should have had knowledge due to the revised cleaning schedule, but Plaintiff does not make any

reference to Defendant James, who was not an adjustment committee member.  Further, there is no

evidence in the record that Defendant James was aware of the conditions in either of Plaintiff's cells.

Plaintiff testified that James simply escorted Plaintiff to the segregation unit, not to any individual cell,

and that he never saw James after being dropped off in segregation.  There is no evidence in the record

that James was aware of Plaintiff's cell conditions or that he had access to any report on cell conditions

or cleaning schedules.  Thus, Defendant James is also entitled to summary judgment on Count I.

**B.     Retaliation**

Defendants claim that they are also entitled to summary judgment on Plaintiff's

retaliation claim.  Plaintiff alleges that he was issued a disciplinary report and sentenced to segregation

in retaliation for being a "jailhouse lawyer".  In order to establish a First Amendment retaliation claim

under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was "engaged in activity protected by the

---

[4]  Plaintiff argues in his responsive brief that Defendant Crow delivered the adjustment committee's report to Plaintiff Wheeler personally in his cell on July 30, 2008 and thus would have saw the conditions of Plaintiff's cell at that time.  Plaintiff points to an Exhibit E at Document 77 which presumably supports this argument.  However, the Court notes that there are no exhibits attached to Doc. 77, nor has the Court found anything suggesting that Defendant Crow visited Plaintiff's cell.  Plaintiff specifically stated that Crow never visited his cell, discuss with the situation with him, or was ever aware of the conditions in his cell (Doc. 112 Ex. A at pp. 81, 90-91).

First Amendment" and that he "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).**  Plaintiff must also demonstrate that "his speech was at least a motivating factor in the [defendant's] action" in order to make his prima facie case. *Zellner v. Herrick*, **639 F.3d 371, 378-79 (7th Cir. 2011) (citing** *Massey v. Johnson*, **457 F.3d 711, 716 (7th Cir. 2006)).**  However, once Plaintiff has made his prima facie case, the burden shifts to defendant "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, i.e. it would have happened anyway. *Greene v. Doruff*, **660 F.3d 975, 980 (7th Cir. 2011).**  Plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner*, **639 F.3d at 379.**  At the summary judgment stage of proceedings, "mere speculation" on the plaintiff's part is insufficient; instead, a plaintiff must come forward with some evidence of causation. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, **544 F.3d 752, 757 (7th Cir. 2008)**.

       **1.**      *Heck v. Hemphrey*

       Defendants Bradley, Sutton, Fernandez, and Crow argue that they are entitled to summary judgment on Plaintiff's retaliation claim because his claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, **512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)**. In *Heck*, the Supreme Court held that "a prisoner is barred from pursuing a § 1983 claim when 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence'" which includes challenges to the fact or duration of a plaintiff's confinement. *Johnson v. Litscher*, **260 F.3d 826, 830 (7th Cir. 2001) (quoting** *Heck*, **512 U.S. at 478, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).**  The Supreme Court has extended the *Heck* ruling to include damage claims regarding prison disciplinary actions. *See Edwards v. Balisok*, **520 U.S. 641, 117 S.ct. 1584, 137 L.Ed.2d 906 (1997).**  Thus, when

a prisoner seeks damages based on allegations that imply the invalidity of a punishment imposed effecting a prisoner's fact or duration of confinement (i.e. loss of good time credits), the prisoner can not proceed with a §1983 claim until his disciplinary decision has been invalidated.  *See Simpson v. Nickel*, **450 F.3d 303, 306-07 (7th Cir. 2006) (***Heck*** and ***Edwards*** held "that a prisoner whose grievance implies the invalidity of ongoing custody must seek review by collateral attack).**

However, a prisoner may proceed on a §1983 claim when he challenges a "disciplinary sanction that does not affect the overall length of confinement" like disciplinary segregation, loss of a job, or loss of recreation time.  *DeWalt v. Carter*, **224 F.3d 607, 616-17 (7th Cir. 1999) (prisoner did not challenge the duration of his confinement as his discipline only involved a "condition" of his confinement, namely the loss of his prison job);** *Simpson*, **450 F.3d at 307 (***Heck*** and** *Edwards* **did not apply to a prisoner claiming that inmates retaliated against him by issuing bogus conduct reports because the discipline involved 300 days of segregation and 25 days loss of recreation privileges and thus prisoner was never "in custody" for purposes of collateral review).**  In these situations, the possibility of collateral or habeas review is unavailable.  *Simpson*, **450 F.3d at 307;** *DeWalt*, **224 F.3d at 617.**  A prisoner may also bring his claim under §1983 for damages against the person responsible once his custody has ended.  *Simpson,* **450 F.3d at 307**.

Defendants allege that Plaintiff's claim of retaliation is, in effect, barred by *Heck* because a finding in his favor would necessarily invalidate Plaintiff's finding of guilt as to his disciplinary report for Possession or Solicitation of Unauthorized Personal Information, which he plead guilty too.  The Court agrees.  The crux of Plaintiff's only remaining claim under Count II is Plaintiff's claim that Defendants retaliated against him for being a jailhouse lawyer by issuing him a disciplinary report and placing him in segregation.  Plaintiff argues that the search was pretextual and that the subsequent disciplinary report and punishment stemming from that report were retaliatory in nature.  A finding in

favor of Plaintiff would necessarily imply that the disciplinary ticket and subsequent punishment was issued out of improper motives and thus invalid.  Thus, such a finding would, implicitly, invalidate his disciplinary ticket and his punishment of a month loss of good time credit, even though it does not appear that he seeks such relief from his Complaint.  Further, the Court notes that Plaintiff remains in custody at this time.  *Simpson,* **450 F.3d at 307 (noting that an inmate may seek §1983 relief against a responsible party once his custody ends)**. As Plaintiff lost a month good time credit for his disciplinary report, the rule set forth in *Heck* bars his claim until he has first had that report overturned on collateral review.  *See Dorn v. Delong*, **Case No. 02-1348, 2006 WL 542935, at *3 (C.D. Ill. March 3, 2006)(Plaintiff's claim that Defendants wrote a false disciplinary ticket fell under the Heck rule as Plaintiff's claims implied the invalidity of the punishment he imposed even if he did not seek restoration of his good time credits);** *Olive v. Wright*, **Case No. 07-1031, 2007 WL 1832106, at *1 (C.D. Ill. June 25, 2007)(Plaintiff's claim that Defendants issued false disciplinary ticket in retaliation could not proceed because deciding the claim would require the Court to determine whether his disciplinary ticket was "invalid and based on improper motivation.");** *West v. Shah*, **Case No. 11-CV-3271, 2011 WL 3924164, at *3 (C.D. Ill.  September 7, 2011)(Plaintiff's claim regarding false disciplinary ticket could not stand because it implies his good time credit should be restored).**  Accordingly, Plaintiff's claims are barred by *Heck* and *Edwards*.

### 2.    Discipline Would have Occurred Anyway

The Court further finds that Defendants are entitled to summary judgment on this claim because Defendants have established that the challenged discipline would have occurred in any event, even in the absence of any claimed retaliatory motive.  Once a plaintiff has made out a prima facie case for retaliation, the burden shifts to defendant to demonstrate that defendant's animus was not a

necessary condition of the conduct, i.e. it would have happened anyway. *Greene v. Doruff*, **660 F.3d 975, 980 (7th Cir. 2011);** *Zellner v. Herrick*, **639 F.3d 371, 379 (7th Cir. 2011).**  In other words, even where animus is a motiving factor, a defendant can still prevail.  If defendant meets this burden, plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that retaliatory animus was the real reason for the decision." *Zellner*, **639 F.3d at 379.**  "At the summary judgment stage, this means that a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id*. **(citing** *Vukadinovich v. Board of School Trustees*, **278 F.3d 693, 699 (7th Cir. 2002)).**

Here, Defendants argue that they are entitled to summary judgment because the disciplinary ticket would have been written absent retaliatory motive.  Defendants point to the fact that upon Bradley searching Plaintiff's cell he found personal property belonging to other inmates.  Plaintiff admitted in his deposition that he indeed had the materials and that he was not authorized to have the documents in his possession (Doc. 112 Ex. A at p. 75).  Plaintiff also plead guilty to the offense, all of which Defendants argue demonstrates that the disciplinary ticket would have been issued absent retaliatory motive.  Plaintiff argues in his Response that the Defendants' reasoning was pretextual, however, a party must show that the defendant's justification had no basis, was not the real reason for the action, or was insufficient to warrant the action.  However, Plaintiff admits that he was guilty of the offense and had materials in his possession that he was not authorized to have.  Thus, Plaintiff has not shown that Defendants' stated reasons were pretextual.  Accordingly, the Court **GRANTS** Defendants motion for summary judgment and **DISMISSES** Count II as to Defendants Bradley, Sutton, Fernandez, and Crow.

## V.  Conclusion

The Court **GRANTS** Defendants' Motion for Partial Summary Judgment (Doc. 112).

The Court **GRANTS** Summary Judgment as to Defendants Merchant, James, Sutton, Fernandez, and

Crow on Plaintiff's Count I for violations of the Eighth Amendment for his inhumane conditions of

confinement.  The Court further **GRANTS** Defendants Bradley, Sutton, Fernandez, and Crow's motion

for summary judgment as to Plaintiff's Count II retaliation claim.  Thus, the only claim that remains for

trial is Count I against Defendants Bradley, Kisro, and Hartman for an Eighth Amendment violation

for subjecting Plaintiff to inhumane conditions of confinement.

**IT IS SO ORDERED**.

DATED: April 25, 2012.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge